

**FILED**

JEANNE A. NAUGHTON, CLERK

**JAN. 5, 2017**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY:

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : |  |
|  | : | CHAPTER 7 |
| MARIELA ZAPATA, | : |  |
|  | : | CASE NO.:     11-29113 (SLM) |
| Debtor. | : |  |
|  | : |  |
|  | : |  |
| STEVEN P. KARTZMAN, Chapter 7 Trustee, | : |  |
|  | : |  |
| Plaintiff, | : | ADV. PRO. NO.:   14-01010 (SLM) |
| v. | : |  |
|  | : |  |
| ARCOLA SALES & SERVICE CORP., d/b/a ARCOLA BUS SALES and d/b/a WWW.ARCOLASALES.COM, and JOHN DOES (1-100), | : |  |
|  | : |  |
| Defendants. | : |  |

**OPINION**

## APPEARANCES:

Steven P. Kartzman, Esq.
Mellinger Sanders & Kartzman, LLC
101 Gibraltar Drive, Suite 2F
Morris Plains, New Jersey 07950
***Attorneys for Plaintiff, Steven P. Kartzman***

Christopher E. Hartmann, Esq.
Hartman & Anglim, LLC
1256 Rt. 202/206N
Bridgewater, New Jersey 08807
***Attorneys for Defendant, Arcola Sales & Service Corp.***

**THE HONORABLE STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a *Motion for Summary Judgment on Counts One and Seven of the Complaint and Striking Defendant's Affirmative Defenses* (**"Summary Judgment Motion"**) (Adv. Pro. No. 14-01010, Docket No. 53), filed by the Chapter 7 Trustee, Steven P. Kartzman (**"Trustee"**), by and through his counsel, Mellinger Sanders & Kartzman, LLC, in Adversary Proceeding No. 14-01010[1] (the **"Adversary Proceeding"**).  Defendant, Arcola Sales & Service Corp. (**"Arcola"**), by and through its counsel, Hartman & Anglim, LLC, filed a *Letter Brief* (**"Response"**) (Docket No. 58) in opposition to the Summary Judgment Motion.

In response, the Trustee filed a *Letter Brief* (**"Summary Judgment Reply"**) (Docket No. 64).  The Court held a hearing on December 10, 2015[2] (**"December 10th Hearing"**).  After the December 10th Hearing and with permission of the Court, Arcola filed its own *Letter Brief* (Docket No. 70) as a final response to the Summary Judgment Reply.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a), the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 and amended October 17, 2013.  This matter constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).  Venue is proper under 28 U.S.C. § 1408.

---

[1] Hereafter every reference to the docket pertains to Adversary Proceeding No. 14-01010-SLM unless stated otherwise.
[2] At the December 10th Hearing, the Court heard the Trustee's Summary Judgment Motion and Arcola's *Motion to Dismiss Adversary Proceeding with Prejudice* (**"Second Motion to Dismiss"**) (Docket No. 55).  On September 27, 2016, the Court issued a decision denying Arcola's motion to dismiss. *See In re Zapata*, 2016 WL 5400374 (Bankr. D.N.J. Sept. 27, 2016).  That decision was memorialized in a September 27, 2016 Order. (Docket No. 78).

Pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court issues the following findings of fact and conclusions of law.[3]

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This adversary proceeding has a long and tumultuous history that started in state court almost ten years ago.  Parts of the procedural and extensive factual history of this Adversary Proceeding and main bankruptcy case are addressed and summarized in three prior opinions.  *See In re Zapata*, 2014 WL 4364797 (Bankr. D.N.J. Sept. 3, 2014); *In re Zapata*, 2015 WL 510885 (D.N.J. Feb. 5, 2015); *Zapata*, 2016 WL 5400374.

The legal dispute, which later evolved into this Adversary Proceeding, commenced in 2008 when Mariela Zapata ("**Debtor**") and her wholly-owned company, Mariela Transportation, filed a Complaint against Arcola in the Superior Court of New Jersey, Law Division, Morris County ("**State Court**") (the "**2008 Case**").  At the center of this dispute was and still is a sale of a used school bus gone wrong.[4]  The State Court dismissed the 2008 Case for lack of prosecution on June 26, 2009.

On June 24, 2011, the Debtor filed for bankruptcy.  *See* Case No. 11-29113-SLM ("**Main Case**").  The Debtor failed to disclose her cause of action against Arcola and the Debtor's bankruptcy case proceeded as a "no asset" case. The Debtor received a discharge on September 30, 2011 and the case was closed on October 12, 2011.

---

[3] To the extent any of the findings of fact might constitute conclusions of law, they are adopted as such.  Conversely, to the extent any conclusions of law might constitute findings of fact, they are adopted as such.

[4] In September 2007, the Debtor, acting on behalf of Mariela's Transportation, signed a vehicle order to purchase a used 1999 school bus from Arcola.  *See* Docket No. 53-2 at 8.  Debtor paid Arcola $18,500.00.  Debtor never took title because of an alleged defect and Arcola never returned the $18,500 payment to the Debtor.  *See Zapata*, 2016 WL 5400374 at *1.

In 2012, the Debtor refiled her lawsuit against Arcola in the State Court (the "**2012 Case**").[5] In response, Arcola filed a motion for summary judgment indicating the Debtor did not have standing to bring the claim in light of the bankruptcy. Arcola provided notice of the summary judgment motion to the Trustee, who at the time was the "former trustee" since the status of the bankruptcy case was "closed." On October 28, 2013, counsel for the Trustee appeared before the State Court to oppose Arcola's summary judgment motion. Both the Debtor and her counsel failed to appear. The State Court subsequently dismissed the 2012 Case with prejudice in November 2013. In dismissing the case with prejudice, the State Court carved out an exception to the dismissal, which allowed the Trustee to pursue the Debtor's claims against Arcola if the Trustee took action before January 27, 2014.

### I.       *Motion to Reopen the Bankruptcy Case*

On November 7, 2013, the Trustee filed with this Court a *Motion to Reopen Case and to Appoint a Trustee Pursuant to 11 U.S.C. § 350(b) and Rule 5010* ("**Motion to Reopen**") (Main Case, Docket No. 10). On December 6, 2013, the Trustee was reappointed to the case (Main Case Docket No. 13). On January 6, 2014, the Trustee filed a *Notice of Removal* thereby initiating the instant Adversary Proceeding (Docket No. 1). The Trustee's Motion to Reopen and subsequent removal of the 2012 Case triggered the exception carved out by the State Court. *See Zapata,* 2016 WL 5400374 at *7 (this Court found that the Trustee took the necessary steps to revive the 2012 Case). Consequently, the 2012 Case was reinstated as of the date the Complaint was originally filed in State Court.

The Complaint from the 2012 Case now serves as the Trustee's Complaint in this Adversary Proceeding. (Docket No. 6). The Complaint asserts seven causes of action against

---

[5] The 2012 Case was titled *Mariela Zapata and Mariela's Transportation v. Arcola Sales & Service Corp., d/b/a Arcola Bus Sales and d/b/a www.arcolasales.com, and John Does (1-100)* bearing Docket No. MRS-L-001394-12.

Arcola: (1) Count One – breach of contract; (2) Count Two – breach of warranty; (3) Count Three – negligent misrepresentation; (4) Count Four – consumer fraud; (5) Count Five – consumer fraud asserted under a different authority; (6) Count Six – negligence; and (7) Count Seven – breach of implied covenant of good faith and fair dealing. *Id.* at 3-10.

On February 24, 2014, Arcola filed a *Motion to Dismiss Adversary Proceeding or in the Alternative Motion to Remand Filed by Arcola Sales & Service Corp., d/b/a Arcola Bus Sales and d/b/a www.arcolasales.com* ("**First Motion to Dismiss**") (Docket No. 7). On September 3, 2014, the First Motion to Dismiss was denied. (Docket No. 23). Arcola appealed the dismissal. On February 5, 2015, Arcola's appeal was denied. (Docket No. 43).

Before Arcola's appeal was heard in the District Court, Arcola filed a *Statement in Response to Notice of Removal* ("**Response to Notice of Removal**"), which incorporated all of the affirmative defenses asserted in the 2012 Case[6] and added five new affirmative defenses: (1) the bankruptcy court lacks subject matter jurisdiction ("**Affirmative Defense One**"); (2) the removed action was dismissed in State Court ("**Affirmative Defense Two**"); (3) all claims removed to this Court are precluded by applicable statute of limitations and rules governing timely requests for relief from judgment or orders ("**Affirmative Defense Three**"); (4) removal is defective pursuant

---

[6] The following are affirmative defenses raised by Arcola in the 2012 Case: (1) plaintiff fails to state a claim upon which relief may be granted ("**Affirmative Defense Six**"); (2) plaintiff breached the contract, foreclosing all remedies asserted ("**Affirmative Defense Seven**"); (3) plaintiff repudiated the contract, precluding all remedies asserted ("**Affirmative Defense Eight**"); (4) plaintiff failed to perform on the contract ("**Affirmative Defense Nine**"); (5) plaintiff's claims fails due to a mutual mistake of fact ("**Affirmative Defense Ten**"); (6) plaintiff's claims are precluded due to inadvertent error ("**Affirmative Defense Eleven**"); (7) plaintiff's claims are precluded by the fact that she has suffered no damage or ascertainable loss ("**Affirmative Defense Twelve**"); (8) plaintiff's claims are precluded by their unreasonable delay in pursuing the claims ("**Affirmative Defense Thirteen**"); (9) plaintiff's claims are precluded by her failure to mitigate damages ("**Affirmative Defense Fourteen**"); (10) plaintiff's claims are precluded by application of rules of offset ("**Affirmative Defense Fifteen**"); (11) plaintiff never properly revoked her acceptance of the vehicle pursuant to applicable provision of New Jersey Uniform Commercial Code ("**Affirmative Defense Sixteen**"); (12) plaintiff's claims are precluded by her failure to provide Arcola with an adequate opportunity to cure alleged defects or non-confirmation on the subject vehicle ("**Affirmative Defense Seventeen**"); and (13) plaintiff does not allege any illegal or unconscionable or deceptive practices allegedly committed by Arcola ("**Affirmative Defense Eighteen**"). (Docket No. 32-2 at 7-9).

6

to 26 U.S.C. § 1452(a) ("**Affirmative Defense Four**"); and (5) removal was defective pursuant to

Federal Rule of Bankruptcy Procedure 9027 and other applicable rules ("**Affirmative Defense**

**Five**"). (Docket No. 32 at 3-4).

## II.    *Summary Judgment Motion*

In this summary judgment motion, the Trustee requests that this Court find for him as a

matter of law on three separate issues: (1) breach of contract; (2) breach of the implied covenant

of good faith and fair dealing; and (3) striking the 18 affirmative defenses found in Arcola's

Response to Notice of Removal.[7] (Docket No. 53-6 at 2).

In its responsive pleadings, Arcola asserts that this Court need not reach the merits of the

Trustee's Summary Judgment Motion.  (Docket No. 58 at 16).  Specifically, Arcola asserts the

following: (1) summary judgment is unavailable to the Trustee;[8] and (2) the Trustee's claims are

time-barred.  *Id*. at 5-12.  In the alternative, Arcola asserts that triable issues of fact would preclude

summary judgment for the plaintiff.  *Id*. at 12.

### A.    **Statute of Limitations**

Arcola raised the statute of limitations affirmative defense for the first time in its Response

to Notice of Removal   (Docket No. 32).  Among other affirmative defenses raised in the Response

---

[7] The Trustee did not orally argue this point during the December 10th Hearing, but it is contained in the moving papers.  The Trustee takes the position that "[a]ll of the defenses related to the propriety of removal; dismissal of the State Court Action; whether [Trustee] lacks standing; and that [Trustee] failed to have the State Court dismissal order vacated" have already been considered and rejected by the Bankruptcy Court and District Court.  (Docket No. 53-6 at 10).  The Trustee further asserts that all of the arguments made and facts presented in favor of summary judgment as to the breach of contract and breach of the implied covenant of good faith and fair dealing causes of action makes Affirmative Defense Six to Eighteen improbable and futile.  *Id*. at 10-15.  Similarly, the Trustee maintains that Affirmative Defense One fails since the Court has "related to" jurisdiction over this Adversary Proceeding. *Id*. at 10-11.

[8] Arcola argues that it would be improper for this Court to decide the Trustee's Summary Judgment Motion on the grounds that the State Court Action was dismissed prior to its removal to the bankruptcy court.  (Docket No. 58 at 5). The Court rejected this argument when it denied Arcola's Second Motion to Dismiss and will do so here as well.  *See Zapata,* 2016 WL 5400374.

to Notice of Removal, Arcola asserted "[a]ll claims 'removed' are precluded by applicable statutes of limitations and rules governing timely requests from judgments or orders." *Id.* at 4.

In his Summary Judgment Motion, the Trustee asserts that "[Arcola's] Answer in the State Court Action reveals that [Arcola] did not raise a statute of limitations defense." (Docket No. 53-6 at 11). The Trustee further asserts that Arcola's failure to raise the defense in its State Court Answer prevents Arcola from raising it in this Adversary Proceeding. *Id.*

In rebuttal, Arcola asserts that the Trustee's breach of contract claim was stale when it was removed to the bankruptcy court. (Docket No. 58 at 20). Specifically, New Jersey Statutes Annotated Section 12A:2-725, which is part of New Jersey's adaptation of the Uniform Commercial Code ("**U.C.C.**"), governs the dispute and subjects the Trustee's claims to a four year statute of limitations. *Id.* Arcola further asserts that it has not amended or re-pled its pleadings from the 2012 Case because Arcola was operating under the assumption that the case was dismissed and the dismissal was never set aside. *Id.* Arcola maintains that "if [the 2012 Case] is 'reinstated', Arcola has the right to amend its pleadings before trial and it has already asserted its intended amendments in that context. The Trustee has had full and fair notice of [Arcola's] intentions, with all other rights reserved, for more than a year."[9] *Id.* at 21.

The Trustee disagrees with Arcola's assertion that Section 12A:2-725 is applicable in the instant case. (Docket No. 64 at 3). Rather, the Trustee asserts that New Jersey Statutes Annotated Section 2A:14-1 is the appropriate statute. *Id.* Section 2A:14-1 sets forth a six year statute of limitations for breach of contract claims. The Trustee maintains if the Court applies the six year statute of limitations, it would find that the Complaint filed in the 2012 Case was timely. (Docket No. 64 at 3). At the same time, the Trustee concedes that, in situations where the U.C.C. governs,

---

[9] Notably, Arcola made this argument while the "reinstatement" issue was still being decided by this Court.

8

Section 12A:2-725 supersedes Section 2A:14-1. Hr'g Tr. 77:10–12, December 10, 2015. In the

alternative, the Trustee maintains that even if the Court finds Section 12A:2-725 applicable, the

Court should still consider the Complaint filed in the 2012 Case as timely based on the doctrine of

equitable tolling.

## DISCUSSION

### I.    *Summary Judgment*

Courts do not grant or treat motions for summary judgments lightly. Federal Rule of Civil

Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides

for entry of summary judgment where "movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

Fed. R. Bankr. P. 7056;[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is material

when its resolution 'might affect the outcome of the suit under governing law ....' " *Justofin v.*

*Metro. Life Ins.*, 372 F.3d 517, 521 (3d Cir. 2004).

At the summary judgment stage, the role of the court "is not to weigh evidence, but to

determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F.Supp.2d 546, 549

(D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Inferences and

facts should be construed in the light most favorable to the non-moving party. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Sempier v. Johnson & Higgins*, 45 F.

3d 724, 727 (3d Cir. 1995). The Court can only consider evidence that would be admissible at

trial. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989).

---

[10] The quoted language derives from the 2010 revision of Rule 56(a), which replaces prior Rule 56(c). Notably, it replaces "genuine issue of material fact" with "genuine dispute as to any material fact." Many of the cases cited herein predate the change to the Rule utilizing the older terminology.

The moving party bears the burden to make an initial showing that there is no genuine issue of material fact. *Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp.*, 477 U.S. at 323). The burden then shifts to the non-moving party to establish the existence of doubt as to the material facts. *Cardenas v. Massey*, 269 F.3d 251, 254–55 (3d Cir. 2001). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *Id.* at 248. To this end, irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Id.* Thus, only disputes over facts "that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Dehart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004) (citing *Anderson*, 477 U.S. at 248).

Summary judgment may be proper even though some material facts remain disputed if, after all inferences are drawn in favor of the non-moving party, the moving party is entitled to judgment as a matter of law. "[T]he inquiry involved in a ruling on a motion for summary judgment...necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252.

The Third Circuit has held that the purpose of summary judgment is to avoid an unnecessary trial, which results in delay and expense, by promptly disposing of any actions in which there is no genuine dispute of material fact. *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (3d Cir. 1974). However, summary judgment is characterized as a "drastic remedy." *Id.* The Third Circuit has stated that "where there is the slightest doubt as to the facts," summary judgment may not be granted. *Id.*

10

## II.     *Arcola did not Waive its Statute of Limitations Affirmative Defense*

The statute of limitations issue is not the first issue addressed in the Trustee's Summary Judgment Motion, however, the Court views the statute of limitations issue as the threshold issue presiding over this Adversary Proceeding. Therefore, statute of limitations will be addressed first. If the Debtor in this case was barred from asserting the breach of contract and/or breach of the implied covenant of good faith and fair dealing claims in the 2012 Case, then the Trustee will be barred from bringing those claims in this Adversary Proceeding.

The Trustee insists that the Arcola waived its statute of limitations defense because Arcola failed to raise the defense in its Answer to the Complaint filed in the 2012 Case. Arcola takes the position that if the 2012 Case was reinstated, which it has been, Arcola has the right to amend its pleadings before trial to include the statute of limitations affirmative defense.

It is true that "parties should generally assert affirmative defenses early in litigation, so they may be ruled upon, prejudice may be avoided, and judicial resources may be conserved." *Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002). Nevertheless, there is no absolute rule limiting defendant's ability to plead the statute of limitations affirmative defense. *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 506 (3d Cir. 2006). Ergo, the statute of limitations defense can be raised by "motion, at any time (even after trial), if plaintiffs suffer no prejudice." *Id.* (citing *Charpentier v. Godsil*, 937 F.2d 859, 863–64 (3d Cir. 1991)). In fact, the Third Circuit has held that plaintiffs who are aware of an existing affirmative defense are not prejudiced by a defendant asserting the defense outside their initial pleadings. *Cetel*, 460 F.3d at 506. In *Cetel*, the Third Circuit affirmed the District Court's finding that plaintiffs suffered no undue prejudice because they were aware of the statute of limitations issue for the simple reason that other defendants in the case had already pleaded in their answer that the plaintiffs' claims were time-barred. *Cetel*, 460 F.3d at 506.

Moreover, if the plaintiff is aware of the affirmative defense, the length of time it takes the defendant to raise it should not alone control whether or not the plaintiff is prejudiced. *See Pondexter v. Dep't of Hous. & Urban Dev.*, 324 F. App'x 169, 171 (3d Cir. 2009) (holding that the defendant did not waive its statute of limitations affirmative defense, even though it brought the motion for summary judgment five years after lawsuit was initiated, because plaintiff had ample notice that defendant sought to assert a statute of limitations defense).

Here, the Trustee provided no evidence of any prejudice suffered by Arcola's timing in raising the statute of limitations as a defense. Thus, this Court finds that Arcola's raising of the statute of limitations defense at this juncture of the Adversary Proceeding does not prejudice the Trustee. Like the plaintiffs in *Cetel*, the Trustee was aware of the statute of limitations issue. As mentioned, Arcola included the statute of limitations defense in its Response to Notice of Removal. (Docket No. 32 at 4). The Trustee specifically addressed Arcola's statute of limitations defense in his Summary Judgment Motion. The Trustee's own observations about the existence of this issue, as well as the Trustee's rebuttal and defenses, evidences the Trustee's awareness of this looming issue. Since the Trustee clearly knew of Arcola's position regarding the statute of limitations and the Trustee had the opportunity to fully brief and present oral arguments on the issue, the Court finds that Trustee suffers no prejudice by the Court's review and acceptance of Arcola's statute of limitations defense at this juncture of the Adversary Proceeding. Accordingly, Arcola's statute of limitations defense will be considered by this Court.

### A.    N.J.S.A. Section 12A:2-725 Governs Both the Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Claims

Arcola asserts that Section 12A:2-725 applies to both the breach of contract and breach of the implied covenant of good faith and fair dealing. Section 12A:2-725 states the following:

(1) [a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

(4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this Act becomes effective.

N.J. Stat. Ann. § 12A:2-725. Section 12A:2-725 is a subsection of New Jersey's adaptation of the

U.C.C. *See, e.g., ACH Enterprises 1 LLC v. Viking Yacht Co.*, 817 F. Supp. 2d 465, 468 (D.N.J.

2011) (New Jersey District Court applying Section 12A:2-725 to a U.C.C. transaction).

Conversely, the Trustee contends 12A:2-725 does not apply and instead, Section 2A:14-1

applies to both the breach of contract and breach of the implied covenant of good faith and fair

dealing causes of action. Section 2A:14-1 states the following:

[e]very action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account **other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and**

> **servants,** shall be commenced within 6 years next after the cause of
> any such action shall have accrued.
>
> **This section shall not apply to any action for breach of any
> contract for sale governed by section 12A:2-725 of the New
> Jersey Statutes.**

N.J. Stat. Ann. § 2A:14-1 (emphasis added). As indicated by the plain language of Section 2A:14-

1, the statute does not apply in the instances where Section 12A:2-725 would govern. *See Ford*

*Motor Credit Co. v. Arce,* 348 N.J. Super. 198, 791 A.2d 1041 (App. Div. 2002) (reversing the

trial court decision based in part on its errored application of Section 2A:14-1 to a transaction

involving the purchase of a used car). Hence, the next inquiry the Court must make is whether the

2007 transaction between Arcola and the Debtor is governed by the U.C.C. and, in turn, Section

12A:2-725.

The U.C.C only governs goods transactions between merchants. *See* N.J. Stat. Ann.

§ 12A:2-102. The U.C.C. defines the term "merchant" as follows:

> a person who deals in goods of the kind or otherwise by his
> occupation holds himself out as having knowledge or skill peculiar
> to the practices or goods involved in the transaction or to whom such
> knowledge or skill may be attributed by his employment of an agent
> or broker or other intermediary who by his occupation holds himself
> out as having such knowledge or skill.

N.J. Stat. Ann. § 12A:2-104(1). The U.C.C. defines the terms "between merchants" as "any

transaction with respect to which both parties are chargeable with the knowledge or skill of

merchants." N.J. Stat. Ann. § 12A:2-104(2). The U.C.C. defines the term "goods" as follows:

> all things (including specially manufactured goods) which are
> movable at the time of identification to the contract for sale other
> than the money in which the price is to be paid, investment securities
> (Chapter 8) and things in action. "Goods" also includes the unborn
> young of animals and growing crops and other identified things
> attached to realty as described in the section on goods to be severed
> from realty (12A:2-107).

N.J. Stat. Ann. § 12A:2-105(1).

First, Arcola is a merchant under the definition and interpretation of Section 12A:2-104(1). New Jersey state courts have consistently applied provisions of the U.C.C. to contracts involving automobile dealerships and automobile leasing corporations. *See, e.g., Cuesta v. Classic Wheels, Inc.*, 358 N.J. Super. 512, 818 A.2d 448 (App. Div. 2003) (automobile dealership); *Mercedes-Benz Credit Corp. v. Lotito*, 328 N.J. Super. 491, 746 A.2d 480, (App. Div. 2000) (automobile leasing corporation); *Barco Auto Leasing Corp. v. Holt*, 228 N.J. Super. 77, 84, 548 A.2d 1161, 1165 (App. Div. 1988) (holding that companies who are in the business of buying, selling and leasing automobiles are considered merchants for the purposes of the U.C.C.). Arcola in its own trade name, which is "Arcola Bus Sales," defines itself as a corporation involved in bus sales. Likewise, pleadings from the 2008 Case identify Arcola as a "bus dealership." *See, e.g.,* (Docket Nos. 6 at 1).

Second, the Debtor purchased the school bus on behalf of her wholly-owned transportation company. Companies providing transportation services fit the definition of a merchant under the definition and interpretation of Section 12A:2-104(1). *See, e.g., Trans Hudson Express, Inc. v. Nova Bus Co.*, 2007 WL 1101444 (D.N.J. Apr. 11, 2007) (District Court for the District of New Jersey applying the U.C.C. to a transaction involving a public transportation corporation); *Bogen Commc'ns, Inc. v. J. Fanok Servs., Inc.*, 2001 WL 1406898, at *1 (N.J. Super. Ct. Law Div. Apr. 19, 2001) (New Jersey Superior Court applying the U.C.C. to a transaction involving a shipping company).

Third, a school bus, as with all motor vehicles, is considered a "good" for the purposes of the U.C.C. *See Sudol v. Rudy Papa Motors*, 175 N.J. Super. 238, 240 (1980)[11] (noting that a purchase of a used automobile is a purchase of goods for the purposes of the U.C.C.); *Barco Auto*

---

[11] District Court, Passaic County, New Jersey

*Leasing Corp.*, 228 N.J. Super. at 84 (noting that an automobile is a good for the purpose of the U.C.C.).

The sale of the bus by Arcola to the Debtor involved a transaction between merchants involving the sale of goods. This Court, therefore, finds that the 2007 transaction between Arcola and the Debtor is governed by the U.C.C. As such, it is subject to the four-year statute of limitations provided by Section 12A:2-725 and not the six-year statute of limitations set forth in Section 2A:14-1.

In applying the four year statute of limitations set forth in Section 12A:2-725, this Court finds that the 2012 breach of contract and breach of the implied covenant of good faith and fair dealing claims were filed outside of the permitted statute of limitations period. Under Section 12A:2-725, "a cause of action accrues when the breach occurs" and a "breach of warranty occurs when tender or delivery is made." N.J. Stat. Ann. § 12A:2-105(2). The Trustee asserts that both the breach of contract and the breach of warranty occurred sometime in 2007. The Complaint was refiled in 2012. Simple mathematics demonstrate more than four years passed between the time the causes of actions accrued and the date the 2012 Complaint was filed.

## B. Equitable Tolling

In the alternative, the Trustee asserts that the Court is not bound to the confines of the four year statute of limitations if Section 12A:2-725 applies. Rather, the Trustee argues that the facts of this case support an equitable tolling of the statute of limitations. This Court disagrees.

Equitable tolling is an equitable doctrine created to "ameliorate the sometimes harsh and unjust impact of [statute of] limitations." *Bernoskie v. Zarinsky*, 344 N.J. Super. 160, 164 (App. Div. 2001). The New Jersey Supreme Court adopted this equitable doctrine in order to allow "an injured party to extend the time for filing a claim beyond what would be allowed under a rigid

application of the statutes of limitations." *Id.* (citing *LaFage v. Jani*, 166 N.J. 412, 420-31 (2001) (equitable tolling); *Negron v. Llarena*, 156 N.J. 296, 304-05 (1998) (substantial compliance); *Lopez v. Swyer*, 62 N.J. 267, 273-76 (1973) (discovery rule)).

Equitable tolling has generally been applied in three circumstances where: (1) the complainant has been induced or tricked, by its adversary's misconduct, into allowing the filing deadline to pass; (2) a plaintiff has in some extraordinary way been prevented from asserting his rights; and (3) a plaintiff has timely asserted his rights mistakenly by either defective pleadings or in the wrong forum. *Binder v. Price Waterhouse & Co., L.L.P.*, 393 N.J. Super. 304, 312 (App. Div. 2007) (citing *Freeman v. State*, 347 N.J. Super. 11, 31, 788 A.2d 867, 880 (App. Div.), *certif. denied*, 172 N.J. 178, 796 A.2d 895 (2002)). A plaintiff will not be permitted to rely on the doctrine if he or she "has the information in sufficient time to comply with the limitations period." *Trinity Church v. Lawson-Bell*, 394 N.J. Super. 159, 172 (App. Div. 2007). "Absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Freeman*, 347 N.J. Super. at 31, 788 A.2d at 880 (citing *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)).

The factual circumstances of this case do not warrant the application of the equitable tolling doctrine as none of the three circumstances listed above are present in this Adversary Proceeding, nor has the Trustee directed this Court to any extraordinary circumstances warranting relief. While the circumstances surrounding the transaction certainly create sympathy for the Debtor, the Trustee failed to assert any facts warranting the extraordinary remedy of equitable tolling of the statute of limitations. The Trustee provided no facts nor alleges Arcola engaged in any trickery preventing the Debtor from timely filing the 2012 Action. The Trustee makes no allegations that some event

occurred that prevented the Debtor from filing before the expiration of the statute of limitations. Nothing in the record supports a conclusion that the Debtor timely asserted her rights but mistakenly filed defective pleadings.

In his attempt to persuade the Court that this case calls for equitable tolling, the Trustee draws comparison between this case and a New Jersey Supreme Court case *Zaccardi v. Becker*, 88 N.J. 245, 440 A.2d 1329 (1982). This Court does not find the Trustee's comparison persuasive since the facts of the *Zaccardi* case are completely different from this one. In *Zaccardi*, plaintiffs in a medical malpractice action filed a complaint that was later dismissed without prejudice for failure to answer interrogatories. *Id*. at 249-250. Following the dismissal, the case continued to remain on the docket for 17 months and was adjourned for discovery approximately ten times. *Id*. at 250. The court found that during this time plaintiff relied on the seeming vitality of the suit and defendants did nothing to dissuade. *Id*. at 260. The defendants never objected to the repeated adjournments nor took any steps to inform the court that the case had been dismissed. *Id*. at 250, 257. Eventually the plaintiffs moved to vacate the dismissal and asked for a 60-day extension for discovery. *Id*. at 250. The trial court granted the motion, but the defendants appealed. *Id*. The Appellate Division reversed and reinstated the order of dismissal. *Id*. Plaintiffs filed a *writ of certiorari*. *Id*.

Before the Supreme Court of New Jersey ruled on the matter, the plaintiffs filed a new complaint that was identical to the original. *Id*. The two year statute of limitations expired by the time the second complaint was filed. *Id*. The defendants raised the statute of limitations defense and the case was dismissed. *Id*. Plaintiffs appealed the trial court's decision and the Appellate Division affirmed, but, when further appealed, the New Jersey Supreme Court reversed the Appellate Division and remanded the case back to the trial court. *Id*. The New Jersey Supreme

18

Court applied "equitable principals" to estop the defendants from asserting the statute of limitations as an affirmative defense. *Id.* at 257.

The New Jersey Supreme Court's analysis in *Zaccardi* primarily focused on the defendants' inaction while the case was dismissed but was still on the docket,

> [i]n this case, an identical previous complaint had been timely filed. Defendants were well aware that plaintiffs' first complaint had been dismissed in July 1976 for failure to answer interrogatories. **Nevertheless, for the following 17 months, while the case remained on the trial calendar of the Superior Court and was actually adjourned for discovery at least ten times, defendants took no steps to inform the court that the case had been dismissed or to object to the adjournments. Rather, they added to the delay while plaintiffs acted under the reasonable misapprehension that the defendants had agreed to the continuation of the case.** In fact, defendants did not question the pendency of the lawsuit until plaintiffs moved to vacate the dismissal. Then for the first time defendants argued that plaintiffs' case had been dismissed with finality. This contention was inconsistent with defendants' conduct over the preceding year and a half.

*Id.* at 257 (emphasis added). The facts of this Adversary Proceeding are different in one crucial aspect: the record does not indicate that the Debtor relied on or was somehow misguided by either Arcola's action or inaction. The 2008 Case was filed by the Debtor and dismissed in 2009 due to Debtor's lack of prosecution. After the case was dismissed, the record shows no evidence of Arcola taking any actions that would indicate the case was still alive. Accordingly, this Court finds no reason to equitably toll the statute of limitations.

## II.   *Arcola's Affirmative Defenses*

The Trustee asserts that every single one of Arcola's eighteen affirmative defenses should be stricken. The Court agrees, but only in part and for different reasons.

After the Court's most recent decision denying Arcola's Second Motion to Dismiss, a number of affirmative defenses are now moot. Accordingly, the following affirmative defenses

are moot: (1) Affirmative Defense Two – the removed action was dismissed in State Court;

(2) Affirmative Defense Four – removal is defective pursuant to 26 U.S.C. § 1452(a); and

(3) Affirmative Defense Five – removal was defective pursuant to Federal Rule of Bankruptcy

Procedure 9027 and other applicable rules.  Conversely, the Court will not strike Arcola's statute

of limitations defense because, as discussed above, this Court finds that Arcola did not waive its

statute of limitations defense.

Although the Trustee fails to cite to any legal authority, since this is a federal court, the

Court assumes the Trustee is moving under Federal Rule of Civil Procedure 12(f).  Rule 12(f)

states the following:

> (f) Motion to Strike. The court may strike from a pleading an
> insufficient defense or any redundant, immaterial, impertinent, or
> scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to
> the pleading or, if a response is not allowed, within 21 days
> after being served with the pleading.

Fed. R. Civ. P. 12(f)

Motions to strike are useful tools in the promotion of judicial economy as they serve to

eliminate inefficient defenses and cut out the time and expense which would otherwise be spent

litigating the inconsequential issues.  *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 93

(D.N.J. 2014) (citing *United States v. Kramer*, 757 F.Supp. 397, 410 (D.N.J.1991)).  However, in

deciding whether or not to grant a motion to strike, courts should be cognizant that generally

motions to strike are disfavored.  *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)

(citing *Tonka Corp. v. Rose Art Industries, Inc.*, 836 F.Supp. 200, 217 (D.N.J. 1993)).

In reviewing a motion to strike, courts may exercise "considerable discretion."  *Tonka*

*Corp.* 836 F. Supp. at 217.  However, courts in the Third Circuit are not permitted to strike defenses

unless "the insufficiency of the defense is clearly apparent." *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986). Courts should generally deny a motion to strike "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Garlanger*, 223 F. Supp. 2d at 609 (quoting *Tonka Corp.*, 836 F.Supp. 200 at 217). Parties moving to strike their opponent's defenses must demonstrate that the "the presence of surplusage will prejudice the adverse party." *Newborn Bros*, 299 F.R.D. at 94 (quoting *F.T.C. v. Hope Now Modifications, LLC*, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011).

The Court does not find any of Arcola's remaining fourteen affirmative defenses[12] as confusing the issues or being clearly insufficient. Arcola's affirmative defenses rest on its interpretation of the facts and are directly related to the issues of this case. Striking the remaining affirmative defenses would in turn provide the Trustee with a win by default since Arcola would stripped of its ability to defend itself at trial. Taking into account the general trend of denying motions to strike and that the Court on summary judgment must view the facts most favorable to the non-moving party, the Court will not strike Arcola's remaining affirmative defenses.

Accordingly, Affirmative Defenses Two, Four, and Five will be stricken as moot. The Trustee's request to strike the remaining affirmative defenses is denied.

## CONCLUSION

For the above and foregoing reasons, the Court concludes that the Trustee's Summary Judgment Motion should be denied as to the breach of contract and breach of the implied covenant of good faith and fair dealing causes of action. Further, the Court denies in part and grants in part the portion of the Trustee's Summary Judgment Motion seeking to strike Arcola's affirmative

---

[12] Arcola's remaining affirmative defenses are: Affirmative Defense One, Three, and Six through Eighteen.

Case 14-01010-SLM    Doc 79    Filed 01/05/17    Entered 01/05/17 16:38:43    Desc Main
                    Document      Page 22 of 22

defenses.  Affirmative Defenses Two, Four, and Five will be stricken as moot, while the Trustee's

request to strike the remaining affirmative defenses is denied.  The Court will enter an Order

consistent with this Opinion.


STACEY L. MEISEL
UNITED STATES BANKRUPTCY JUDGE


Dated: 1/5/17